FILED
2011 Feb-08  AM 09:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

DWAYNE VAUGHN,

    PLAINTIFF,

VS.                                    CASE NO.: CV-10-J-1657-M

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and the brief of the Commissioner.[1] The court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal or remand of a final decision of the Commissioner of Social Security. All administrative remedies have been exhausted.

The administrative proceedings leading to this action began on March 20, 2007, when the plaintiff filed an application for Disability Insurance Benefits, which was denied (R. 44-50). The plaintiff requested a hearing, which was held in front of an administrative law judge ("ALJ") on September 29, 2009 (R. 26-43).  The ALJ thereafter rendered an opinion finding that the plaintiff was not under a disability at any time through the date of her decision (R. 19-25).  The plaintiff's request for administrative review of the ALJ's decision by the Appeals Council was denied on April 20, 2010 (R. 3-5).  The ALJ's decision thus became the final order of the

---

[1]The plaintiff has appeared *pro se* in this case and did not file a brief in his own behalf.

Commissioner of Social Security. *See* 42 U.S.C.§ 405(g). This action for judicial review of the agency action followed (doc. 1).

**Factual Background**

The plaintiff applied for disability insurance benefits ("DIB") due to pain in his legs and knees, dizziness, and an abnormal heart rate (R. 116-117). Although the plaintiff believed he may have Huntington's disease as well, Dr. Fazal Rahim opined such a diagnosis for the plaintiff was "highly unlikely" (R. 217). He also had a prior heart attack and subsequent heart surgery (R. 142, 150). The plaintiff further alleged that he gets drowsy from his medications, he gets out of breath easily, he has problems sleeping, he lacks peripheral vision, and he suffers from depression (R. 35-36).

The plaintiff was born May 28, 1962, and completed the twelfth grade (R. 32, 123). He has held a wide variety of jobs, ranging from the medium to the very heavy level and from unskilled to skilled, over the last fifteen years (R. 38). The plaintiff alleges an onset date of February 14, 2005, and was found to have had several unsuccessful work attempts since that time (R. 92).

The plaintiff testified that he has been given jobs by friends for years but was fired because of his inabilities (R. 32, 42). He has a CDL license, but had an accident on his first trip and now no one will hire him because of it (R. 35-36). In his Physical Activities Questionnaire, the plaintiff wrote that he could stand one hour, walk one hour, and sit for three hours (R. 106). However, he also stated that he walked like a

drunkard because he stumbled and his legs hurt (R. 106). The plaintiff said his problems with balance and insomnia have gotten worse (R. 131). A neurologist has recommended testing, but the plaintiff could not afford to have it done (R. 35).

At the hearing, the Vocational Expert ("VE") testified that if the plaintiff's testimony was regarded has true, he would neither be able to perform his past relevant work nor any other jobs in the national economy (R. 38-39). Assuming the plaintiff was limited as set forth in the state agency assessment, including no more than light work with a prohibition on climbing ladders, ropes, and scaffolding, with a further limitation of avoiding extreme temperatures, fumes, dusts, gases, dangerous machinery and unprotected heights, the VE testified that the plaintiff could not perform any of his previous work, but could work as a cashier, or small products assembler, both of which are light and unskilled (R. 39). Additionally, the lack of peripheral vision would not prevent such work as long as the person could turn his head to see (R. 40).

The medical evidence in the record is sparse. The plaintiff's treatment records reflect a history of coronary artery disease (R. 140, 142, 149) and hypertension which was controlled (R. 142, 149). He received alternately Elavil, Zoloft, Paxil, Ambien and Klonopin for ongoing problems with insomnia, anxiety and depression (R. 160, 162).

A consultative evaluation in May 2007 noted the plaintiff's complaints of dizziness, tunnel vision, lack of any sense of smell, pain in his legs and knees and

problems with his legs "giving way" (R. 201, 202). Dr. Jariwala, the consultative examiner, recorded a history of retinal detachment in both eyes, and that no surgery was done (R. 202). Dr. Jariwala found the plaintiff to have 20/20 vision with glasses, and further found the plaintiff was not color blind (R. 202). He did not provide any opinion concerning the plaintiff's complaints of tunnel vision or lack of peripheral vision. He found the plaintiff to have a normal gait, noted no muscle spasm and recorded that the plaintiff was able to heel and toe walk and squat and arise without difficulty (R. 204). He noted no neurological deficits (R. 204).

In contrast, a July 12, 2007, medical record from Dr. Kyle Hudgens reflects the plaintiff suffered a "horrid motorcycle accident in the early 1980's, at which time he was in a coma for nearly three weeks, and after which he has had no sense of smell, and has lost peripheral visual fields and in his inferior visual fields (R. 214). Dr. Hudgens stated as his impression:

> History of significant traumatic brain injury, with restricted visual fields, and chronic dysequilibrium. This, along with his other health problems, suggests to me that he cannot be in the ranks of the gainfully employed. The restricted visual fields alone make him at risk for injury to himself or someone else

(R. 214). Similarly, a February 2009[2] visit to neurologist Fazal Rahim resulted in Dr. Rahim's findings of

---

[2] Although this record pre-dates both the hearing and the decision of the ALJ by a number of months, there is no mention of Dr. Rahim's findings in the ALJ's decision, and the court is unable to determine whether the ALJ considered this record prior to entering her decision.

> 1. Dizzinesss and imbalance. This is a 46-year-old gentleman with a HX of traumatic brain injury and head trauma. Clinical evaluation is suggestive of peripheral onset vertigo originating from the left labyrinth....
> 2. Traumatic brain injury. His memory problems and filed of vision restrictions are likely due to traumatic brain injury....
> 3. Huntington's disease. On a clinical examination, there is no evidence for a chronic progressive degenerative neurological disorder.

(R. 216).

The plaintiff returned to Dr. Hudgens in November 2009 (R. 232). Dr. Hudgens opined that the plaintiff "has reduced visual fields inferiorly and side-by-side...."[3] (R. 232).

In a letter dated October 20, 2009,[4] a prior employer of the plaintiff's states that despite trying to find some work the plaintiff could perform, "nothing proved to be a viable task that he could safely perform" (R. 137). The letter further states

> I found that Mr. Vaughn was unable to work in the office, due to his inability to maintain proper balance and lack of peripheral vision. He would knock over costly equipment, cause spills, break items, trip and run into everything in his path. Mr. Vaughn would become so upset that he would be unable to complete the day.
> I was unable to give Mr. Vaughn any assignments that required concentration, his brain injury; as well as, his medication resulted in inadequate memory to follow instructions for performing duties requiring any significant thought process. I could not assign errands to be performed by Mr. Vaughn, due to his inability to safely drive or operate equipment.

---

[3]This record post-dates the decision of the ALJ.

[4]This letter bears the same date as the ALJ's decision.

> I assigned simple tasks to be performed outdoors; however, variances in terrain proved to be haxardous to Mr. Vaughn. He would not see holes in the ground or be aware of un-level surfaces; thus creating falls and injury to himself.

(R. 137).

In his opinion, the ALJ found the plaintiff suffered only from the severe impairments of coronary artery disease and hypertension (R. 21). As such, the ALJ had to specifically reject the testimony of the plaintiff as well as the findings of Dr. Hudgens and Dr. Rahim that the plaintiff had loss of peripheral vision. In fact, the ALJ rejected all evidence post-dating June 2007 in favor of the non-examining, non-consulting, non-medical opinion of Margo Edge, a state agency consultant (R. 23). The ALJ stated

> ... the Administrative Law Judge gave substantial weight to the opinion of the State agency medical consultant indicating that the claimant could perform a wide range of light work activity. Although the medical consultant did not examine the claimant .... the opinion was grounded in the evidence contained in the record at the time. The Administrative Law Judge finds that additional evidence received into the record after the reconsideration determination,[5] including the hearing testimony, did not provide new information that would significantly alter the conclusion reached by the State agency medical consultant. The Administrative Law Judge finds that the assessment is well-supported by the medical records and the consultative examination, and should be afforded appropriate weight as a non-examining medical source. On the other hand, little weight was given to Dr. Hudgens' assessment that the claimant is unable to work due to a restricted visual field and chronic disequalibrium. These conditions have not been shown by medically

---

[5] The court notes the reconsideration stage for Social Security claims was eliminated long before this claim was filed.

>acceptable clinical or laboratory diagnostic techniques, and it appears that Dr. Hudgens based his assessment solely on the claimant's subjective report of his symptoms, rather than on visual field testing...

(R. 23-24).

Having thus ignored most of the sparse evidence in the record, and having adopted the findings of the non-examining, non-consulting, non-medical state agency consultant, the ALJ determined that the plaintiff could perform a range of unskilled light work (R. 24-25). The ALJ found that the plaintiff's ability to perform a full range of light work was impeded by with additional limitations (R. 25), but failed to opine what those limitations might be. The ALJ then states that the VE testified someone limited like the plaintiff could perform the jobs of cashier or small product assembler, and relies on the testimony of the VE that, based on a question from plaintiff's counsel, a lack of peripheral vision could be compensated for by turning one's head[6] (R. 25).

## Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work. If the claimant is successful the burden shifts to the Commissioner to prove that the claimant can perform some other type of work

---

[6]The record reflects this actually was a question posited by the ALJ, and the VE actually testified that given a lack of peripheral vision, "[t]he cashier would be the most difficult but if a person's able to turn your head to see, it should be fine" (R. 40).

existing in the national economy. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir.2004); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir.1996). "Substantial evidence" consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

In determining whether substantial evidence exists, this court must scrutinize the record in its entirety, taking into account evidence both favorable and unfavorable to the Commissioner's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir.1987). "Even if the Court finds that the evidence weighs against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence." *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir.1981); *see also Harwell v. Heckler*, 735 F.2d 1292 (11th Cir.1984); *Martin v. Sullivan*, 894 F.2d 1520 (11th Cir.1990).

This court must also be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Bridges v. Bowen,* 815 F.2d 622, 624

(11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993). The Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir.1987). The ALJ must evaluate the combination of impairments with respect to the effect they have on the plaintiff's ability to perform the duties of work for which he or she is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir.1990). Merely reciting that the plaintiff's impairments in combination are not disabling is not enough. The ALJ is required to make specific and well articulated findings as to the effect of the combination of impairments. *Walker*, 826 F.2d at 1001.

**Legal Analysis**

In this case, the ALJ determined that the plaintiff had the residual functioning capacity to perform work at the "light" level of unskilled work, apparently based solely on her own hypothetical. No medical opinion supports the limitations supposed by the ALJ. No medical opinion regarding the plaintiff's ability to perform light level, or any other level, work appears anywhere in the record before this court.

The ALJ gave substantial weight to the opinion of the State agency medical consultant "indicating that the claimant could perform a wide range of light work activity" (R. 23). An ALJ "must consider findings of [non-examining] State agency medical and psychological consultants ... as opinion evidence, except for the ultimate determination about whether you are disabled." 20 C.F.R. § 404.1527(f)(2)(i). Here, the ALJ went beyond the weight required to be afforded the state agency consultant, and instead used that opinion to reject all other medical evidence in the record.

The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir.1983). The ALJ is required, however, to state with particularity the weight she gives to different medical opinions and the reasons why. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

> Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis,* 125 F.3d at 1440; *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241. With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id*. at 1240-41.

*Winschel v. Commissioner Of Social Security,* 2011 WL 198372, 2 (11th Cir.2011).

Here, the ALJ merely stated that she rejected Dr. Hudgens' opinion because "it appears that Dr. Hudgens based his assessment solely on the claimant's subjective report of his symptoms...." (R. 24). However, the lack of objective evidence is not

dispositive given the nature of the plaintiff's claims. *See e.g., Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir.1995). Given that the plaintiff alleges dizziness and limited peripheral vision as causes for his inability to work, and given that these limitations are found credible by the plaintiff's treating physicians, the ALJ did not establish good cause to ignore these opinions. *See e.g., Somogy v. Comm'r*, 366 Fed.Appx. 56, 63-64 (11th Cir.2010) (collecting cases discussing the lack of objective tests which can confirm certain diagnoses, in context of fibromyalgia). "Other than a lack of objective medical findings [of dizziness and limited range of vision], there is nothing in the record to suggest that [the plaintiff] does not suffer [the limitations he] reported or that [his] doctors should have disbelieved his complaints. *Id*., at 64.

The ALJ's disregard of all evidence that contradicted the opinion of the state agency medical consultant, including all evidence post-dating June 2007, constituted legal error. Further compounding this error is the lack of any mention of the later records of Dr. Rahim and Dr. Hudgens, which lend credence to the severity of limitations claimed by the plaintiff. Given the record before this court, the records in question were either added prior to the ALJ's decision and ignored, or prior to consideration by the Appeals Council, and ignored. Either way, the court is of the opinion a remand for consideration of these records is appropriate.

The ALJ considered the plaintiff's physical impairments to a degree, as she concluded "the claimant's ability to perform all or substantially all of the requirements of [light] work has been impeded by additional limitations" (R. 25), but

11

she failed to set forth what those limitations might be.  The law requires an ALJ to evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir.1987); *Davis*, 985 F.2d at 534.

The court has no means by which to determine whether the ALJ complied with this requirement, as her opinion is devoid of any such findings.  The plaintiff's diagnoses of insomnia, anxiety and depression, for which he was prescribed Elavil, Zoloft, Paxil, Ambien and Klonopin are entirely ignored by the ALJ.  Furthermore, plaintiff's sight limitations and "dizziness and imbalance" are also ignored by the ALJ.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir.2001).

The Commissioner has a duty to develop a full and fair record.  *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir.1990).  This did not occur in this case. Sorely lacking from the extensive medical records is any medical opinion as to how the plaintiff's numerous impairments impact his ability to engage in a variety of everyday activities.  The only evidence to address such limitations, the letter from plaintiff's

past employer (R. 137-138), was apparently in the record prior to consideration by the Appeals Council, but never mentioned.

Records in evidence at the time the ALJ rendered his decision support a conclusion that the plaintiff does have significant limitations. Therefore, the court will remand this case to the ALJ to properly consider the evidence in the record, to obtain a further physical consultative evaluation if necessary, for proper application of the law, and any further development of the record deemed necessary for these purposes.

## Conclusion

Based on the lack of substantial evidence in support of the ALJ's findings, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Agency for further action consistent with this opinion, as set forth herein.

**DONE** and **ORDERED** this the 8th day of February, 2011.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE